IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Melissa A. Farley, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 4:15-CV-2450-RBH-KDW |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Goodwill Industries of Lower South | ) | |
| Carolina, Inc. and Anne Hanzel, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Melissa A. Farley ("Farley" or "Plaintiff"), filed this action against her former employer, Goodwill Industries of Lower South Carolina ("Goodwill"), and a former coworker, Anne Hanzel ("Hanzel"), (collectively "Defendants"). Against Goodwill, Plaintiff alleges employment discrimination due to her gender pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and her age pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. She also brings a state-law-based claim against Goodwill for "Breach of Contract and Covenants of Good Faith and Fair Dealing"[1] and a state-law claim for tortious interference with contractual relations against Defendant Hanzel. *See* Compl., ECF No. 1-1.

This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Defendants' Motion to Dismiss, or in

---

[1] To the extent Plaintiff seeks to bring a claim for "breach of the implied covenant of good faith and fair dealing," such claim should be dismissed for failure to state a claim as South Carolina does not recognize this claim as a separate cause of action. *See RoTec Servs., Inc. v. Encompass Servs., Inc.*, 597 S.E.2d 881, 884 (S.C. Ct. App. 2004) (holding "the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract"). Defendants note this point in the Motion under consideration, ECF No. 6 at 7, n.1; Plaintiff does not contest the point in her response, ECF No. 23. The court considers Plaintiff's first cause of action herein as a breach of contract claim only.

the alternative, for Summary Judgment. ECF No. 6. The court has considered Defendants'

Motion and Memorandum; Plaintiff's response, as amended, ECF Nos. 13, 23;[2] and Defendants'

Reply, ECF No. 25. Having reviewed the parties' submissions and applicable law, the

undersigned recommends Defendants' Motion to dismiss Goodwill from the case be denied and

the Motion to dismiss Hanzel from the case be granted.

## I.     Background

Plaintiff, who worked for Goodwill as a store manager from March 24, 2008 through

January 10, 2014, claims she was discriminated against on account of her gender and her age.

*See* Compl., ECF No. 1-1. Plaintiff avers she trained Defendant Hanzel, her former subordinate,

and assisted Hanzel in qualifying for a district manager position. *Id.* ¶ 7. According to Plaintiff,

once Hanzel became District Manager, Hanzel "harassed and interfered with Plaintiff daily, and

purposefully intimidated, denigrated and embarrassed Plaintiff in the presence of her employees

on numerous occasions." *Id.* ¶ 9. According to Plaintiff, Hanzel's "campaign" against her

culminated in her January 10, 2014 termination without cause. Pl.'s Mem. 2.

## II.     Standard of review

Defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, or alternatively, pursuant to Rule 56, arguing that Plaintiff's state-law claims should

be dismissed for failure to state a claim and that her federal claims should be dismissed for

failure to exhaust administrative remedies.

In considering Defendants' argument that Plaintiff's Title VII and ADEA claims should

be dismissed for failure to exhaust administrative remedies, the court notes the "issue may [be]

more properly addressed under Rule 12(b)(1), instead of Rule 12(b)(6)." *Agolli v. Office Depot,*

---

[2] With the court's permission, Plaintiff submitted an amended memorandum in opposition to Defendants' Motion. ECF No. 23. The exhibits included with Plaintiff's initial responsive memorandum, ECF Nos. 13-1 through 13-8, remain pertinent to this matter.

*Inc.*, 548 F. App'x 871, 875 (4th Cir. 2013) (in Title VII context). When a defendant challenges subject-matter jurisdiction pursuant to a Rule 12(b)(1) motion to dismiss, the court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004) (citing cases).

A motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Nonetheless, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, on a motion pursuant to Rule 12(b)(6), if matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d). Here, Defendants' Motion is styled as one brought pursuant to Rule 12 or, in the alternative, Rule 56. When ruling on a Rule 12(b)(6) motion, if considering documents not in the pleadings or motion to dismiss (other than as noted above), the court must convert the proceeding to one for summary judgment. Fed. R. Civ. P. 12(d). But, conversion of a motion to dismiss to one for summary judgment requires that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

III.    **Analysis**

A.    **ADEA and Title VII claims: exhaustion of administrative remedies**

The court finds it appropriate to consider Defendants' challenge to Plaintiff's federal-law-based employment claims first. Defendants argue that "[t]o the extent Plaintiff did not submit a verified charge to the EEOC [Equal Employment Opportunity Commission], her Title VII and ADEA claims should be dismissed." Defs.' Mem. 6. In response, Plaintiff details her dealings with the EEOC regarding the administrative-remedy process and submits that, to the extent she did not satisfy certain regulatory requirements, equity requires the court to consider her to have exhausted administrative remedies so that her claims can be considered on the merits (at a later date). Pl.'s Mem. 7-11. On reply, Defendants argue it is inappropriate to consider Plaintiff's equitable argument in connection with Plaintiff's Title VII claim. Defs.' Reply 4-5. Neither Plaintiff not Defendants devotes much of their arguments to whether Plaintiff adequately exhausted her administrative remedies as to her ADEA claim.

Before filing suit under the ADEA or Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC.[3] 42 U.S.C. § 2000e–5(f)(1); 29

---

[3] With respect to timing, Title VII establishes "two possible limitation periods for filing a discrimination charge with the EEOC." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (explaining that the basic limitations period is 180 days after the alleged unlawful employment practice, but can be extended to 300 days if state law proscribes the alleged employment practice); *see also Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998). In *Puryear v. County of Roanoke*, 214 F.3d 514 (4th Cir. 2000), the court found a claimant was not required to begin his proceedings before the state agency (there, Virginia) so long as they were begun with the EEOC and the EEOC and state have a work-share agreement—making that state a so-called "deferral state"). South Carolina is a deferral state in which the 300-day limitations period applies in certain circumstances. A workshare agreement between the EEOC and South Carolina traditionally has been assumed by courts in this district, making the 300-day deadline applicable "by virtue of any EEOC filing." *Talent v. Comm'r of Pub. Works*, No. 2:12-CV-0622 DCN, 2014 WL 971747, at *3 (D.S.C. Mar. 11, 2014). The ADEA contains the same deadlines. *See* 29 U.S.C. § 626(c)(2)(d) (setting out the 180-day or 300-day-in-deferral-state deadline in ADEA context). The *timely* filing of an administrative charge "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines,*

U.S.C. § 626(d)(1). Neither the ADEA nor Title VII explicitly defines the term "charge." *See Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 393 (2008) (noting the ADEA contains "no statutory definition" of "charge"); *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 112 (2002) (same for Title VII).

Typically, an employee complaining of discrimination contacts the EEOC and provides it with information to support the allegations of illegal discrimination. After receiving that information through an intake questionnaire ("Questionnaire") and any other information the employee has provided, "the EEOC typically assists the employee with filing a charge." *Balas v. Huntington Ingalls Industs.,* 711 F.3d 401, 407 (4th Cir. 2013) (in Title VII context). The EEOC's assistance may include the drafting of a charge to be forwarded to the employee for signature. *Id.* (citing U.S. Equal Employment Opportunity Comm'n, *The Charge Handling Process*, available at http://www.eeoc.gov/employees/process.cfm (last visited by citing court on Feb. 15, 2013)). The EEOC then sends a notice and copy of the charge to the employer, giving the employer an opportunity to conduct its own investigation and resolve any actions internally. At the same time, the EEOC investigates the charge. *Balas*, 711 F.3d at 407. As noted by the Court of Appeals for the Fourth Circuit ("Fourth Circuit"), the filing of a charge also "'initiates agency-monitored settlement, the primary way that claims of discrimination are resolved.'" *Id.* (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).

As to the substance of a charge, regulations concerning both the ADEA and Title VII set out certain very similar requirements for the information a charge must contain.

> One of the [EEOC's] regulations [concerning the ADEA], 29 CFR § 1626.3 (2007), is entitled "Other definitions." It says: "*charge* shall mean a statement filed with the Commission by or on behalf of an aggrieved person which alleges that the named prospective defendant has engaged in or is about to engage in

---

*Inc.*, 455 U.S. 385, 393 (1982) (emphasis added); *see also Jones*, 551 F.3d at 300 n.2. Here, neither party discusses any issues related to timeliness; the court notes that the 300-day deadline is applicable.

> actions in violation of the Act." Section 1626.8(a) identifies five pieces of information a "charge should contain": (1)-(2) the names, addresses, and telephone numbers of the person making the charge and the charged entity; (3) a statement of facts describing the alleged discriminatory act; (4) the number of employees of the charged employer; and (5) a statement indicating whether the charging party has initiated state proceedings. The next subsection, § 1626.8(b), however, seems to qualify these requirements by stating that a charge is "sufficient" if it meets the requirements of § 1626.6—*i.e.,* if it is "in writing and . . . name[s] the prospective respondent and . . . generally allege[s] the discriminatory act(s)."

*Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 395-96 (2008).

Similarly, Title VII requires that a charge "contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e–5(b). Pertinent EEOC regulations require that a charge contain the following information: (1) the full name, address, and telephone number of the person making the charge; (2) the full name and address of the person against whom the charge is made (if known); (3) a clear and concise statement of the facts, including relevant dates, regarding the alleged unlawful practices; (4) if known, the approximate number of employees of the respondent; and (5) a statement disclosing whether any proceedings regarding the alleged unlawful practices have been commenced before a state or local agency. 29 C.F.R. § 1601.12(a). These specific requirements notwithstanding, the EEOC regulations also contain a catchall clause, which provides that "a charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).

Regarding form, Title VII includes a requirement the ADEA does not—that a charge be "verified." *E.g. Wilkes v. Nucor-Yamato Steel Co.*, No. 3:14-CV-00224-KGB, 2015 WL 5725771, at *7 (E.D. Ark. Sept. 29, 2015) ("As it pertains to the form and substance of a charge, however, the only significant difference between Title VII and the ADEA is that the ADEA lacks a verification requirement.").

The Title VII regulations require that a charge be "in writing under oath or affirmation." 42 U.S.C. § 2000e–5(b); *see also* 29 C.F.R. § 1601.9 (establishing that a Title VII charge "shall be in writing and signed and shall be verified"). The EEOC's Title VII regulations define "verified" to mean "sworn to or affirmed before a notary public, designated representative of the [EEOC] or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3. An unverified document that satisfies the other substantive requirements for a charge can be cured by a later-filed charge that is verified, in which case the verified charge relates to the filing date of the unsworn charge. *See* 29 C.F.R. § 1601.12(b); *Edelman*, 535 U.S. at 118 (upholding EEOC's regulation permitting relation back). EEOC regulations characterize the failure to verify a charge as a "technical defect," 29 C.F.R. § 1601.12(b); nonetheless, the Fourth Circuit has held that compliance with Title VII's verification requirement is "mandatory," *Balazs v. Liebenthal*, 32 F.3d 151, 156 (4th Cir. 1994).

A filing must "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee" before it can be deemed a charge. *Holowecki*, 552 U.S. at 402 (in context of a charge alleging violation of the ADEA). In *Holowecki*, the United States Supreme Court addressed whether an EEOC Intake Questionnaire may constitute a "charge" for ADEA purposes. 29 U.S.C. § 621 *et seq*. The Court deferred to the EEOC's position that the regulations' criteria are not exhaustive, meaning that "not all documents that meet the minimal requirements of § 1626.6 are charges." *Holowecki*, 552 U.S. at 397. The Court also adopted the EEOC's position that "the proper test for determining whether a filing is a charge is whether the filing, taken as a whole, should be construed as a request by the employee for the agency to take whatever action is necessary to vindicate her rights." *Id.* at 398. This is sometimes referred to as the EEOC's

"objective test." *See id.* at 402 (noting that, in determining whether submission to the EEOC may be considered a charge requires examination "from the standpoint of an objective observer").

In *Edelman*, the Court considered a challenge to the EEOC's regulation that permitted a Title VII charging party to complete a verification after completing an otherwise-timely discrimination charge. The Court noted that Title VII required both that a charge be filed concerning the complained-of conduct, 42 U.S.C. § 2000e-5(e)(1); and that a charging party must swear or affirm that the allegations are true, 42 U.S.C. § 2000e-5(b). 535 U.S. at 109. At issue was whether the EEOC's regulation permitting the later-submitted verification to "relate back" to the timely filed administrative charge, 29 C.F.R. § 1601.12(b), was appropriate. The Court deferred to the EEOC and its regulation, finding its construction of the requirements was appropriate and the charge did not necessarily have to be verified at the same time it was submitted. 535 U.S. at 117-19.[4]

After a charge is filed with the EEOC, a claimant may initiate a civil action based on the claims made in her EEOC charge only after receipt of a so-called "Right to Sue" letter ("RTS Letter"). Suit must be filed within 90 days of receiving the RTS Letter. *See* 42 U.S.C. § 2000e–5(f)(1) (Title VII); 29 U.S.C. § 626(c)(3)(e) (ADEA).

### B.    Timeline of potentially relevant events concerning administrative exhaustion

Against this backdrop, the following timeline is relevant to the parties' arguments and inform the court's analysis:

- January 10, 2014:
  - Plaintiff's employment with Goodwill was terminated—hence the date on which alleged discrimination took place, *see* Compl. ¶ 5;

- April 28, 2014:
  - Date of hearing before South Carolina Department of Employment and Workforce ("SCDEW") concerning Plaintiff's entitlement to employment

---

[4] The *Edelman* Court remanded to the district court the question of whether an appropriate charge had been submitted. 535 U.S. at 119-20.

security benefits; both Plaintiff and a representative of Goodwill appeared at the hearing, and SCDEW issued its decision on May 8, 2014, finding Plaintiff was not discharged for cause and was entitled to such benefits, *see* ECF No. 13-1;[5] the decision referenced Peggy B. Smith of Goodwill Industries of Lower SC Inc.; *id.*

- October 23, 2014:
  - Date Plaintiff's counsel mailed the EEOC Intake Questionnaire that was completed by Plaintiff (and signed by Plaintiff on October 6, 2014), ECF No. 13-2 (completed four-page Questionnaire and six typed pages providing detailed information about inquiries made in Questionnaire);

- October 31, 2014:
  - Date EEOC Representative Patricia Fuller signed the one-page "Notice of Charge of Discrimination" that was sent to Goodwill Industries of Lower SC in North Charleston, SC (to the attention of Peggy Smith, VP of Human Resources). ECF No. 13-6 at 3. The Notice of Charge indicates that "a charge of employment discrimination has been filed against your organization" under Title VII and the ADEA. *Id.* This EEOC "Form 131" is signed by Fuller on behalf of the EEOC; there is no blank for signature by the Charging Party. The EEOC checked the box indicating "[n]o action is required by you [Goodwill] at this time" concerning the EEOC's "handling of this charge[.]" *Id.* Other "check-box" options not selected by the EEOC in the Notice of Charge in this matter include the following: a request that the employer "call the EEOC Representative listed below concerning the further handling of this charge"; a request that the employer provide a position statement on issues covered by the charge; a request that the employer provide additional information (to be detailed in the Notice of Charge); and a notation of the EEOC's available mediation program that includes a blank for a date to be entered by which the employer should respond should it choose to participate in mediation. *Id.* The Notice of Charge indicates near the end that "[a] perfected charge (EEOC Form 5) will be mailed to you once it has been received from the Charging Party." *Id.*

- November 6, 2014:
  - Deadline by which Plaintiff had to file a charge with the EEOC concerning the January 10, 2014 claims raised, as it is the 300th day after January 10, 2014.

- November 7, 2014:
  - Date Goodwill apparently received the Notice of Charge dated October 31, 2014. ECF No. 13-6 at 3 ("Received" stamp with handwritten notation of "11-7-14").

- December 31, 2014:
  - Date of (unsigned) letter from EEOC Investigator Kimberly L. Ambersley to Plaintiff enclosing a Form 5 that purports to be a "summary of your [Plaintiff's]

---

[5] Plaintiff provided this information in responding to Defendants' Motion. The undersigned includes it for completeness but notes it is not an official part of the administrative process concerning Plaintiff's Title VII or ADEA claims.

claims based on the information you provided." ECF No. 13-3 at 3. The letter continues: "Because the document that you submitted to us constitutes a charge of employment discrimination, we have complied with the law and notified the employer that you filed a charge. Before we investigate your charge, however, you must sign and return the enclosed Form." *Id.*

o   The paragraph at the bottom of the first page of that two-page letter provides as follows:

> Before we initiate an investigation, we must receive your signed Charge of Investigation (EEOC Form 5). Please sign and return the charge within thirty (30) days from the date of this letter. Under EEOC procedures, if we do not hear from you within 30 days or receive your signed charge within 30 days, we are authorized to dismiss your charge and issue you a right to sue letter allowing you to pursue the matter in federal court. Please be aware that after we receive your signed Form 5, the EEOC will send a copy of the charge to South Carolina Human Affairs Commission . . . as required by our procedures. If that agency processes the charge, it may require the charge to be signed before a notary public or an agency official. The agency will then investigate and resolve the charge under their statute.

ECF No. 13-3 at 3.

o   The draft Form 5 Charge of Discrimination that was enclosed includes some information that appears to be correct—such as Plaintiff's name and contact information, Goodwill's contact information. ECF No. 13-3 at 6. The boxes on the Form for the type of alleged discrimination checked are for retaliation, sex, and age. *Id.*
   ▪   Importantly, though, the "particulars" paragraph contains incorrect information, which seems to be taken from an entirely different claimant's complaints. *Id.* (indicating the individual was terminated on August 28, 2014 by Mick Frederes; that the claimant was subjected to racial slurs by Frederes; and that he was dismissed from his position for missing a drug test). That claimant indicates he was discriminated against "based on his race, Black." *Id.*

•   January 6, 2015:
   o   Date Plaintiff sent the incorrect draft Form 5 to her counsel, noting: "This is terrible. They have "Particulars" section completely false—Don't even know Mike Frederes." ECF No. 13-3 at 2. Plaintiff also questioned whether the incorrect form had been sent to Goodwill. *Id.*[6]; Pl.'s Aff. ¶ 3, ECF No. 13-8 (attaching a copy of the incorrect draft Form 5 she received from the EEOC and

_____

[6] In its memorandum, Defendants indicate "it appears Plaintiff did not file a verified charge of discrimination." Defs.' Mem. 6. The record contains no evidence suggesting that the incorrect, unsigned Form 5 was sent to Goodwill at that time.

affirming the incorrect draft Form 5 was based on another's claims against a different employer and that she "declined to verify that Charge of Discrimination under oath, as that would have been a false verification, and would have no bearing on my claims whatsoever.").

- January 7, 2015:
  - Date Plaintiff's counsel spoke by telephone with EEOC Investigator Ambersley advising her the draft Form 5 that had been sent to Plaintiff contained erroneous information. Counsel sent a letter to Ambersley that day confirming that telephone conversation. ECF No. 13-4. The letter provides in pertinent part:

    > This will confirm our telephone conversation this morning, wherein you advised me to disregard and destroy your letter of December 31, 2014. You indicated that you would review this matter with your supervisor, and provide a Right to Sue Letter in the near future. As we discussed, your letter, and the attached "Charge of Discrimination Form," appear to have been erroneously based upon another claimant, and not [Plaintiff].

    ECF No. 13-4.

- February 12, 2015:
  - Date RTS Letter from EEOC was mailed to Plaintiff, with a copy sent to Goodwill and to Plaintiff's counsel. ECF No. 13-5 at 2. The RTS Letter indicates in part as follows:
    > THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

    > Based on its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

    *Id.* (capitalization in original).

- May 15, 2005:
  - Date Plaintiff filed the state-court Complaint in this matter. ECF No. 1-1. The matter was removed to this court on June 17, 2015. ECF No. 1.

### C.    ADEA administrative exhaustion

Although the parties focus principally on whether Plaintiff exhausted administrative remedies as to her Title VII claim, in light of the Supreme Court's guidance in *Holowecki*, the undersigned finds it appropriate to consider the ADEA and Title VII claims separately. *See* 522

U.S. at 393 (noting differences exist between various employment-related statutory and regulatory schemes). Because *Holowecki* concerned an ADEA claim, the undersigned considers whether Plaintiff has exhausted her administrative remedies as to her ADEA claim first.

In *Holowecki* the Court considered whether a claimant's completed intake questionnaire was a sufficient "charge" for purposes of exhausting administrative remedies under the ADEA. The Court adopted the EEOC's "objective test" and found "the proper test for determining whether a filing is a charge is whether the filing, taken as a whole, should be construed as a request by the employee for the agency to take whatever action is necessary to vindicate her rights." *Id.* at 398; *see also id.* at 402 (noting that, in determining whether submission to the EEOC may be considered a charge requires examination "from the standpoint of an objective observer"). To be considered a charge, the information provided also needs to include "information required by the regulations, *i.e.*, an allegation and the name of the charged party[.]" *Id.* at 402.

Here, careful review of the Intake Questionnaire indicates it satisfies the EEOC's objective test and is to be considered a "charge" for exhaustion purposes.[7] In so finding, the court finds the following information regarding the Questionnaire, ECF No. 13-2, relevant:

- The Questionnaire alleges Plaintiff experienced age and gender discrimination as well as retaliation based on a vendetta and because she reported various safety and OSHA violations. The Questionnaire includes details of comparators whom Plaintiff states were treated differently.

- Language at the top of the Questionnaire's first page reminds the claimant that "a charge of employment discrimination must be filed within the time limits imposed by law." ECF No. 13-2 at 4.

- Language on the fourth (and last) page of the printed Questionnaire again reminds claimant that a charge must be filed within a certain number of days and notes in bold: "If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about the

---

[7] As discussed below, the recommended finding that the Questionnaire be considered a "Charge" is not in itself dispositive of all exhaustion issues being considered herein.

EEOC's notifying the employer . . . about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2." ECF No. 13-2 at 7.

•       Plaintiff checked Box 2, which provides in pertinent part: "**I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer  . . . that I accuse of discrimination information about the charge, including my name**." ECF No. 26-1 at 4 (bolded emphasis in original).

•       Plaintiff signed and dated the Questionnaire on October 6, 2014. The signature is not verified, nor does it include any language indicating that the signor is signing under penalty of perjury. ECF No. 26-1 at 4.

•       A footnote below Plaintiff's signature provides in part as follows: "PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) [regarding Title VII] and 29 CFR 1626.8(c) [regarding ADEA], this questionnaire may serve as a charge if it meets the elements of a charge." ECF No. 13-2 at 7.

Considering the content of the Intake Questionnaire—particularly including Plaintiff's checking the box that indicates "I want to file a charge of discrimination . . ."—the October 6, 2014 Questionnaire appropriately is considered a "charge" in satisfaction of the exhaustion-of remedies requirement for the ADEA. Significantly, Defendants' focus in their Motion to Dismiss is that Plaintiff has not exhausted administrative remedies because she has not submitted anything with a verified signature. Unlike the regulations concerning Title VII, the ADEA contains no requirement that a claimant's signature be verified. *See, e.g.*, *Diez v. Minn. Mining and Mfg. Co.*, 88 F.3d 672, 676 (8th Cir. 1996) ("Unlike Title VII, the ADEA does not require that a charge be verified."). *See Sufficiency of Form of Notice to EEOC Charging Violation of ADEA*, 25 A.L.R. Fed. 2d 145, n.15 (Originally published in 2008) (collecting cases noting ADEA contains no verification requirement).

For the above reasons, the undersigned recommends Defendants' Motion to Dismiss be *denied* as to Plaintiff's ADEA claim. Based on the record before the court, considered in view of

Supreme Court precedent, Plaintiff's detailed, completed Intake Questionnaire should be considered a "charge" for administrative-exhaustion purposes.[8] As the ADEA contains no verification requirement, Defendants' argument regarding the lack-of-verification has no bearing on this portion of Plaintiff's claims.

### D.     Title VII administrative exhaustion

Defendants argue Plaintiff's Title VII cause of action is subject to Rule 12(b) dismissal because of failure to exhaust, focusing on Plaintiff's failure to satisfy Title VII's requirement that a charge be "verified." ECF No. 6 at 5. *See* 29 C.F.R. § 1601.9 (providing a Title VII charge "shall be in writing and signed and shall be verified"). Plaintiff does not dispute that Title VII requires that a charge be verified; rather, she argues she is "entitled to equitable relief on the issue." ECF No. 23 at 7.

Although neither party focuses on the issue, prior to considering the argument regarding verification, the undersigned must evaluate whether Plaintiff supplied sufficient information to be considered a "charge" under Title VII as it is under the ADEA. As detailed above, the requirements for what information is to be included in a charge under the ADEA and Title VII are quite similar. *Compare* 29 C.F.R. § 1601.12(a) (Title VII) *with* 29 C.F.R. § 1626.8(a) (ADEA). The undersigned finds Plaintiff's Intake Questionnaire provides information sufficient to constitute a "charge," and that, by checking "Box 2" on the Questionnaire, Plaintiff made it objectively reasonable to determine she wished to file a charge.

The court now considers the issue briefed by the parties—whether equity permits Title VII's verification requirement to be waived and, if so, whether the circumstances herein counsel such waiver. Absent a clear controlling Fourth Circuit holding to the contrary, and given the extreme facts before the court, the undersigned recommends denying Defendants' Motion to

---

[8] Nothing in this Report should be construed as a ruling on the merits of Plaintiff's ADEA or Title VII claims.

Dismiss the Title VII claim for failure to exhaust remedies. In making this recommendation, the undersigned expressly notes Plaintiff's diligent attempts to comply with the EEOC's administrative procedure and that lack of a verified charge stems directly from the EEOC's incorrect action (and not Plaintiff's). This recommended finding is limited to the case at bar.

### 1. Whether Title VII's requirement that a charge be verified is jurisdictional

Defendants point out that the Fourth Circuit has held that compliance with Title VII's verification requirement is "mandatory," *Balazs*, 32 F.3d at 156. The *Balazs* court indicated that "failure to comply with [the verification requirement] is fatal to an action seeking relief under Title VII." *Id.* Defendants also cite to this court's decision in *Crane v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 4:14-CV-01651-PMD, 2015 WL 1014400, at *4 (D.S.C. Mar. 9, 2015), in which the court noted *Balazs* and other cases within the Fourth Circuit made Crane's equity-based argument "unavailing."

Although several district court decisions have found *Balazs* to characterize a verification defect to set out a jurisdictional bar, most notably *Merchant v. Prince George's County Maryland*, 948 F. Supp. 2d 515 (D. Md. 2013), which was quoted in *Crane*, 2015 WL 1014400, *4, under the circumstances of this case, the undersigned is of the opinion that equitable relief is appropriately sought and obtained. Upon close examination of *Balazs*, the undersigned is of the opinion that the Fourth Circuit did not hold that the verification requirement is jurisdictional or endorse the related holding that equity cannot be considered where the verification requirement is concerned. As noted by the Court of Appeals for the Tenth Circuit ("Tenth Circuit") in its recent decision of *Gad v. Kansas State University*, 787 F.3d 1032, 1043 (10th Cir. 2015), the *Balazs* decision found the verification requirement to be mandatory in the context of whether a charge could be amended to include a verification after the EEOC's file had been closed and suit had been filed. *See Balazs*, 32 F.3d at 156-57. The Fourth Circuit did not address the issue of

whether the verification requirement could be waived. *See Gad*, 787 F.3d at 1041 n.8. The undersigned is unaware of any published decision of the Fourth Circuit that expressly has ruled on whether Title VII's verification requirement is jurisdictional. In the absence of such mandatory precedent, the undersigned is persuaded by the Tenth Circuit's reasoning in *Gad* that it is not.

In *Gad,* the plaintiff filed a complaint with the EEOC, alleging discrimination on the basis of her religion, gender and national origin. However, the plaintiff elected not to sign and return the Verified Form 5 to EEOC, indicating that the investigator had informed her *"something that I don't have to return . . . the signing form."* 787 F.3d at 1034. The district court found the verification requirement was jurisdictional and granted the employer's motion for summary judgment based on Gad's failure to have exhausted her administrative remedies by not verifying the EEOC charge (Form 5). *Id.* at 1035. The Tenth Circuit reversed, finding the verification requirement nonjurisdictional and, therefore, waivable. The matter was remanded to the district court for further consideration. *Id.* at 1041-43. On remand, the district court considered the facts and found that the "EEOC's flawed procedures" prejudiced both employee and employer, but determined that, "[o]verall, it would be more prejudicial to Plaintiff to have her substantive rights forfeited entirely due to the EEOC's conduct," and found the verification requirement had been waived. *Gad v. Kan. St. Univ*., No. 12-2375-EFM, 2016 WL 74399, at *8 (D. Kan. Jan. 6, 2016).

In finding the verification requirement nonjurisdictional, the Tenth Circuit was guided by the United States Supreme Court's decision of *Zipes v. Transworld Airlines, Inc.*, 455 U.S. 385, 92-93 (1982), in which the court determined Title VII's statutory time limits for submitting EEOC charges was not jurisdictional and, therefore, subject to equitable considerations, based in part on the fact that the time requirement was not located in the "jurisdictional" portion of Title

VII. *See Gad*, 787 F.3d at 1036-37 & n.4. *See also* 787 F.3d at 1037-38 (noting the Court's decision in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) similarly focused on whether a Title VII requirement was waivable by examining its location in the Title VII statutory structure). In *Arbaugh*, the Court found the 15-employee threshold for Title VII coverage was not jurisdictional noting, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." 546 U.S. at 516. Further, as pointed out in *Gad*, the *Arbaugh* Court noted what it termed "drive-by jurisdictional rulings" in which courts sometimes dismiss matters for lack of subject-matter jurisdiction without considering and analyzing whether the rulings were jurisdictional or based on a failure to state a claim should be given "no precedential effect." *Arbaugh*, 546 U.S. at 511; *see Gad*, 787 F.3d at 1040.

The Tenth Circuit further noted recent Supreme Court cases have counseled treatment of restrictions as jurisdictional in nature only when Congress has "'clearly state[d]' that a rule is jurisdictional." *Gad*, 787 F.3d at 1038 (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, __ U.S. __, 133 S. Ct. 817, 824 (2013)) (internal quotation omitted). *See also* 787 F.3d at 1038 (noting recent decision in *United States v. Kwai Fun Wong*, __ U.S. __, 135 S. Ct. 1625, 1632 (2015), which reiterated that "'[P]rocedural rules . . . cabin a court's power only if Congress has 'clearly state[d]' as much.'") (internal citation omitted).[9]

The Tenth Circuit's analysis is persuasive. Here, Title VII's jurisdictional section is found at 42 U.S.C. § 2000e-5(f)(3). The verification requirement is found at 42 U.S.C. § 2000e-5(b). Additionally, the EEOC regulations characterize the failure to verify a charge as a "technical defect." 29 C.F.R. § 1601.12(b). Absent controlling authority to the contrary, the

---

[9] The *Gad* court further found courts should use caution in interpreting Title VII's procedural rules to avoid forfeiture of rights, noting non-lawyers typically initiate the process. 787 F.3d at 1039. The undersigned notes that, after her SCDEW hearing Plaintiff obtained counsel to represent her in her wrongful termination and discrimination claims.

undersigned is of the opinion that Title VII's verification requirement is nonjurisdictional. The court will now consider the equities of this case and whether that requirement was waived in this instance.

### 2. Whether equity requires the verification requirement be waived in Plaintiff's case

After finding Title VII's verification requirement was nonjurisdictional and, therefore, waivable, the Tenth Circuit noted that it did not "necessarily follow that the EEOC can waive the requirement unilaterally." 787 F.3d at 1042. As the *Gad* court noted, when, as here, it is the EEOC's conduct—and not the conduct of the employer—that arguably led to a requirement's waiver, the court must weigh competing interests. The court noted, on the one hand that allowing waiver based on the EEOC's conduct could cause an employer "through no fault of its own, [to] suffer[] 'the disruption and expense of responding to a claim' despite the lack of verification demonstrating the 'complainant is serious enough and sure enough to support [the claim] by oath subject to liability for perjury.'" 787 F.3d at 1042 (quoting *Edelman*, 535 U.S. at 113). Further, "verification provides notice and an opportunity for the employer to investigate, promoting the prompt administration of discrimination complaints and possible settlement." *Id.*

Here, Plaintiff indicated her desire to file a charge by checking "Box 2" on the Questionnaire that she and counsel completed and she signed. ECF No. 13-2. Just under Plaintiff's signature the form indicated, *inter alia*, that "this questionnaire may serve as a charge if it meets the elements of a charge." *Id.* at 7. On the other hand, this page of the Questionnaire also provided information about the time limits for filing a charge and explained she would "lose [her] rights" if she did not file a charge within those time limits. *Id.*

Several weeks later, the EEOC placed Goodwill on notice of Plaintiff's "Charge of Discrimination" under Title VII and the ADEA. ECF No. 13-6 at 3. As noted by Goodwill, that October 31, 2014 Notice of Charge indicated no further action was required of Goodwill at that

time and that a perfected charge would be provided once it was received. *Id.* The Notice of Charge was signed by an EEOC representative and did not include any space for Plaintiff to sign. Nonetheless, the undersigned notes this Notice of Charge provides: "This is a notice that a charge of employment discrimination has been filed against your organization[.]" *Id.*

As was appropriate, Plaintiff awaited the draft EEOC Form 5 Charge from the EEOC. She received a letter dated December 31, 2014, that included a draft Form 5. The letter itself indicated: "Because the document you submitted to us constitutes a charge of employment discrimination, we have complied with the law and notified the employer that you filed a charge. Before we investigate your charge, however, you must sign and return the enclosed Form." ECF No. 13-3 at 3. That same letter does not distinguish between signed and unsigned charges, and is understandably confusing. Further, the only reference it makes at all to anything akin to a verification requirement is the notation that if the South Carolina Human Affairs Commission processes the charge, that agency "*may* require the charge to be signed before a notary public or agency official." *Id.* (emphasis added).

Even more compelling to the undersigned is that the only draft Form 5[10] ever provided to Plaintiff contained material mistakes. Accordingly, she soon thereafter communicated with her counsel about the mistake, noting she was unable to sign the draft charge without committing perjury. *See* Pl.'s Aff. ¶ 2. In her January 6, 2015 fax cover sheet sending the incorrect Form 5 to her counsel, she noted that the matter was "IMPORTANT" and that the draft Form 5 contained "completely false" information. ECF No. 13-3 at 2. Her note to counsel expressed concern that the EEOC had sent the incorrect information to Goodwill. *Id.* ("and they sent this to Goodwill"!).

---

[10] The incorrect EEOC Form 5 sent to Plaintiff for her signature contains the following language just above the signature line: "I declare under penalty of perjury that the above is true and correct." *See* ECF No. 13-8 at 9. Unquestionably, signing that form as requested by the EEOC would have satisfied Title VII's verification requirement. However, as Plaintiff noted, she "declined to execute that Charge of Discrimination under oath, as that would have been a false verification, and would have no bearing on my claims." Pl.'s Aff. ¶ 3, ECF No. 13-8.

Counsel spoke with EEOC Investigator Ambersley the following day, was advised Ambersley would speak with her supervisor, and that a right-to-sue letter would be forthcoming. ECF No. 13-4 at 2. The precise contours of that conversation are not known to the court. In any event, subsequent to counsel's discussion with EEOC Investigator Ambersley, the EEOC issued a RTS letter that indicated as follows:

> Based upon its *investigation*, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

ECF No. 13-5 at 2 (emphasis added). The issuance of the RTS letter indicates the EEOC undertook some sort of investigation. Compare this statement with the December 31, 2014 letter to Plaintiff indicating it would "initiate an investigation" upon receiving her signed Form 5. ECF No. 13-3 at 3. That same letter indicated the EEOC would issue a RTS letter "allowing [Plaintiff] to pursue the matter in federal court" if the EEOC had not received the signed Form 5 or otherwise heard from Plaintiff within 30 days of receiving the December 31, 2014 letter. *Id.* Whether the EEOC actually investigated the matter is unknown. It did issue a RTS letter on February 12, 2015. Unquestionably, Plaintiff was right not to sign the incorrect draft Form 5. At bottom, however, the EEOC never provided Plaintiff with a corrected draft Form 5. Had it done so, this analysis might be different.

The EEOC's conduct and the inherent confusion in the EEOC's forms and letters combine to convince the undersigned that the EEOC waived any right to insist on a verified Form 5. This waiver arguably impacts both Goodwill and Plaintiff. The undersigned is mindful that Goodwill was not itself involved in the EEOC's actions or inactions. Further, Goodwill was prejudiced in that it is now compelled to defend litigation without having the benefit of a sworn charge from Plaintiff that might have prompted it to undertake investigation. Nonetheless, the

undersigned finds Plaintiff would be more severely prejudiced if she were not allowed to go forward with substantive consideration of her Title VII claims.

In addition to Plaintiff's diligence in pursuing her claims, the undersigned has also considered that Goodwill was aware of Plaintiff's dissatisfaction with her termination from her early challenge to the grounds of her termination before SCDEW; Goodwill participated in a state administrative proceeding in the matter concerning whether Plaintiff was entitled to unemployment benefits. *See* ECF No. 13-1. The undersigned is in no way suggesting those South Carolina administrative proceedings directly relate to the EEOC matter. Rather, in considering the relative equities, the court notes Goodwill was aware Plaintiff was questioning the circumstances of her termination and participated in an administrative hearing regarding same.

In examining the equities herein, the undersigned has also considered that, should the district court adopt the undersigned's above recommendation, Goodwill will be required to defend against Plaintiff's ADEA claim regardless of whether the Title VII claim is considered. Any potential prejudice to Goodwill is erased by this eventuality. Accordingly, the undersigned recommends a finding that Plaintiff has exhausted her administrative remedies as to both her ADEA and Title VII claims.

Finally, the undersigned is further persuaded by Plaintiff's noting that, in *Crane*, United States District Judge Patrick M. Duffy considered the equities. Pl.'s Mem. 8. In *Crane*, the court noted the employee had presented no "specific legal or equitable argument for excusing her noncompliance with Title VII's verification requirement." 2015 WL 1014400 at *4. The court acknowledged language in *Balazs* and several district court decisions that found the lack of a verified charge "fatal" to the employees' arguments that they had exhausted administrative remedies, and found "standing alone, [Crane's] fairness argument will not suffice to overcome what the Fourth Circuit has deemed a 'mandatory prerequisite to the validity of [a] charge.'" *Id.*

(quoting *Balazs*, 32 F.3d at 156) (alteration in *Crane*)). Nonetheless, the *Crane* court entertained Crane's equitable arguments but found the equities favored "the outcome precedent require[s]," that is, dismissal for failure to exhaust. 2015 WL 1014400 at *5.[11] In considering Crane's brief equitable argument—relying principally on language in EEOC forms and correspondence that referenced Crane's having filed a "charge" although she had not submitted a Form 5—the court determined equity did not compel a finding in Crane's favor. *Id.* at 4, 5. In that case, though, the court noted Crane had received a correct draft of a Form 5, but had elected not to verify it and return it to the EEOC. The court was "hesitant" to find Crane had pursued her claims diligently and did not award the equitable relief Crane sought. *Id.* at 5. The court noted, however, that "if [Crane] had pursued her claim diligently and relied to her detriment on the EEOC's representations, it may seem that dismissal would be fundamentally unfair." *Id.*

Here, the undersigned is of the opinion that Plaintiff acted diligently to pursue her claims. She signed and submitted the Questionnaire and, very soon after receiving the incorrect Form 5, she notified her counsel who in turn contacted the EEOC. Without every providing a corrected Form 5 or otherwise instructing Plaintiff to submit anything further in writing, the EEOC issued a RTS letter to Plaintiff, copying Goodwill. On these facts, dismissal of her Title VII claim would, indeed, be "fundamentally unfair" and her failure to submit a verified charge should be excused.

### E.    State-law-based claims based on existence of employment contract

#### 1.  Relevant Facts

Defendants seek Rule 12(b)(6) dismissal of Plaintiff's state-law-based claims: a breach of contract claim against Goodwill and a tortious interference with contract claim against Defendant

---

[11] The *Crane* court found Fourth Circuit precedent required rejection of the employee's equity argument. 2015 WL 1014400, *5. The undersigned notes *Crane*'s March 9, 2015 decision predates the Tenth Circuit's May 27, 2015 *Gad* opinion.

Hanzel. Defendants argue Plaintiff has not sufficiently pleaded the existence of an employment contract between them. In addition, they submit the claim against Defendant Hanzel is brought against her in her official capacity and, as such, an independent cause of action against her will not lie. Defs.' Mem. 2-5. Plaintiff counters that she has sufficiently pleaded the existence of a contract of employment between her and Goodwill based on various policies contained in Goodwill's "Policy and Procedures Manual," as detailed in Plaintiff's Complaint. Pl.'s Mem. 5-7, *see* Compl. ¶ 15(a) through (k) (detailing various portions of the Policies and Procedures Manual that allegedly help form contract of employment).

Plaintiff alleges these "representations were material consideration to Plaintiff" and she relied on them when she accepted employment and the terms of employment offered by and required by Goodwill, averring she was "pursu[ing] a lifelong career and ultimate retirement with/from Goodwill." Compl. ¶ 16. Plaintiff submits her wrongful termination was a material breach of Goodwill's duties and obligations under the contract. *Id.* ¶ 18. She claims that, despite her excellent performance and loyalty, Goodwill "failed and refused to abide by its 'Open Door Policy' and 'Complaint Resolution Policy,' to stop the harassment, abuse and false allegations against Plaintiff . . . ." *Id.* ¶ 20.

Goodwill appropriately points out that South Carolina recognizes the doctrine of employment-at-will and argues Plaintiff has not sufficiently set forth facts that create a contractual employment relationship between Plaintiff and Goodwill. In support of its position that no employment contract existed, Goodwill provides the affidavit of Peggy B. Smith of Goodwill's Human Resources Department to authenticate copies of two "Acknowledgements" Plaintiff signed on July 15, 2008 and June 4, 2011, in which Plaintiff acknowledged her employment with Goodwill was at-will employment and Goodwill disclaimed that any of its policies or procedures could constitute an employment contract. Smith Aff. ¶ 4, ECF No. 6-1;

"Employee Handbook Acknowledgement of Receipt" (signed by Plaintiff on June 4, 2011), ECF No. 6-1 at 5; "Non-JWOD Employee Handbook Acknowledgement of Receipt" (signed by Plaintiff on July 15, 2008), ECF No. 6-1 at 6. These Acknowledgements of Receipt are referred to herein as "Disclaimers" and provide in part that the employee "understand[s] that Goodwill of LSC is an 'AT WILL' employer and neither this handbook, nor any other Goodwill policy, practice or procedure, is intended to provide any contractual obligations relating to continued employment, compensation or employment in a particular position and should in no way be construed as creating any sort of employment contract." ECF No. 6-1 at 5. Further, the acknowledgements indicate:

> EMPLOYMENT WITH GOODWILL IS NOT FOR A FIXED TERM OR DEFINITE PERIOD AND MAY BE TERMINATED AT THE WILL OF EITHER PARTY, WITH OUR WITHOUT CAUSE, AND WITHOUT PRIOR NOTICE. NO SUPERVISOR OR OTHER REPRESENTATIVE OF GOODWILL (EXCEPT THE PRESIDENT) HAS THE AUTHORITY TO ENTER INTO ANY AGREEMENT FOR EMPLOYMENT FOR ANY SPECIFIED PERIOD OF TIME OR TO MAKE ANY AGREEMENT CONTRARY TO THE ABOVE.

*Id.*; *see* ECF No. 6-1 at 6 (same).

### 2.    Breach-of-contract claim

As noted by Defendants, South Carolina "has long recognized the doctrine of employment-at-will." Defs.' Mem. 2 (citing *Prescott v. Farmers Tele. Coop., Inc*., 516 S.E.2d 923, 925-59 (S.C. 1999)). Generally, an at-will employee may be terminated at any time for any reason or for no reason, with or without cause, subject to narrow exceptions and prohibitions against illegal discrimination. *Stiles v. Am. Gen. Life Ins. Co.,* 516 S.E.2d 449, 450 (S.C. 1999). However, in certain situations, the at-will status of an employee may be altered by the terms of an employee handbook, such that an employee may bring a cause of action for wrongful discharge based on breach of contract. *Hessenthaler v. Tri-County Sister Help, Inc.,* 616 S.E.2d 694, 697 (S.C. 2005).

As explained in *Grant v. Mount Vernon Mills, Inc.*, "A handbook forms an employment contract when: (1) the handbook provision(s) and procedure(s) in question apply to the employee, (2) the handbook sets out procedures binding on the employer, and (3) the handbook does not contain a conspicuous and appropriate disclaimer." 634 S.E.2d 15, 20 (S.C. Ct. App. 2006). In *Hessenthaler*, the South Carolina Supreme Court held that "a disclaimer appearing in bold, capitalized letters, in a prominent position, is conspicuous." *Hessenthaler,* 616 S.E.2d at 697. To preserve an employee's at-will status, the disclaimer must comply with S.C. Code Ann. § 41-1-110, which provides:

> It is the public policy of this State that a handbook, personnel manual, policy, procedure, or other document issued by an employer or its agent after June 30, 2004, shall not create an express or implied contract of employment if it is conspicuously disclaimed. For purposes of this section, *a disclaimer in a handbook or personnel manual must be in underlined capital letters on the first page of the document and signed by the employee*. For all other documents referenced in this section, *the disclaimer must be in underlined capital letters on the first page of the document*. Whether or not a disclaimer is conspicuous is a question of law.

S.C. Code Ann. § 41-1-110 (emphasis added).

In its principal brief, Goodwill does not reference Section 41-1-110, nor does it focus on the Disclaimers themselves other than to support the assertion that "Plaintiff's employment is at-will." Defs.' Mem. 2. Goodwill does not provide information concerning the placement of the Disclaimers. In responding to Goodwill's Motion, Plaintiff argues Goodwill's Disclaimers are not "conspicuous" as required by S.C. Code Ann. § 41-1-110 because "the disclaimer is found on page 70 of Goodwill's handbook." Pl.'s Mem. 5. In reply, Goodwill implicitly acknowledges the Disclaimers do not satisfy the precise statutory requirements to be found "conspicuous" as a matter of statutory law by noting "clear compliance with the terms" is not required for a finding an employment contract has not been established. Defs.' Reply 2 (quoting *Oroujian v. Delfin Group USA LLC*, 57 F. Supp. 3d 544, 557 (D.S.C. 2014)). In the next paragraph, though,

Goodwill argues the Disclaimer "is conspicuous as outlined in the disclaimer statute, and fully shows a contract does not exist." *Id.*

As an initial matter, the undersigned notes that neither party has provided the court with a complete copy of the Handbook[12] they have both referenced at length in their arguments. The only actual portions of the Handbook available to the court at this time are the two Disclaimers.[13] ECF No. 6-1.

The complete Handbook is needed for the court to rule on Goodwill's argument that it is entitled to dismissal as a matter of law based on, *inter alia*, the two signed Disclaimers.

Here, the only available information requires a finding that the Disclaimer in this case is not conspicuous as a matter of law. Goodwill is correct, though, that failure to satisfy the statutory definition of conspicuousness as a matter of law does not then require a legal finding that there is a contract of employment. Rather, the "'disclaimer is merely one factor to consider in ascertaining whether the handbook as a whole conveys credible promises that should be enforced . . . . [T]he entire handbook, including any disclaimer, should be considered in determining whether the handbook gives rise to a promise, an expectation and a benefit.'" *Lingard v. Carolina By-Products,* 605 S.E.2d 545, 548 (S.C. Ct. App. 2004) (quoting *Fleming v. Borden, Inc.*, 450 S.E.2d 589, 596 (S.C. 1994). As this court has noted, the court "should look to

---

[12] Based on the information available, it appears the "Policies and Procedures Manual" referenced in the Complaint, *see* Compl. ¶ 15, is the same document referred to by Goodwill and the "Acknowledgements" [referred to herein as "Disclaimers"] as the "Employee Handbook," *see* ECF No. 6-1 at 5-6. *See* Pl.'s Mem. 5 (indicating Goodwill's "handbook contains both a disclaimer, and numerous promises which have been recited in detail in Plaintiff's Complaint."). Herein, references to the "Handbook" include reference to the "Employee Handbook" and the "Policies and Procedures Manual."

[13] Plaintiff's Complaint does include detailed quotations of various policies that she asserts create an employment contract. Compl. ¶15(a) through (k). These policies include a "Non-Discrimination and Anti-Harassment Policy" and a "Management Philosophy" indicating managers "are responsible for using established guidelines when dealing with" performance or behavioral issues. *Id.* ¶ 15(a) and (j).

the entire text" of the handbook when asked to determine as a matter of law whether a handbook creates a contract of employment. *Acosta v. Hilton Worldwide*, No. 4:15-CV-00495-RBH, 2015 WL 5231730, at *4 (D.S.C. Sept. 8, 2015) (citing *Hessenthaler,* 616 S.E.2d at 697). *Hessenthaler* counsels that, in such a situation, courts should determine whether the "handbook statements and the disclaimer, taken together, establish beyond any doubt tha[t] an enforceable promise either does or does not exist") (internal quotation and citation omitted).

As noted above, the record does not include a copy of any portion of the Handbook (other than the two signed Disclaimers). However, Plaintiff's Complaint contains detailed quotations from portions of the Handbook that, at a minimum make the undersigned unable to determine as a matter of law whether a contract does or does not exist. In other words, Plaintiff has set forth sufficient evidence to survive Goodwill's Rule 12(b)(6) challenge. To make the finding Goodwill seeks—that the breach of contract claim must be dismissed as a matter of law—the court would need to consider the full Handbook text.[14] Whether the Handbook contained enforceable promises that altered Plaintiff's status as an at-will employee cannot be resolved at this stage on this record. Accepting Plaintiff's allegations as true, the undersigned is of the opinion that she has stated a plausible claim for breach of an employment contract.

### 3. Tortious-interference-with-contract claim against Defendant Hanzel

Defendant Hanzel argues the sole cause of action against her should be dismissed because Plaintiff has sued her in her capacity as a Goodwill manager. Defs.' Mem. 4; *see*, *e.g.*, Compl. ¶ 11 (averring on information and belief that "Hanzel was acting in furtherance of the instructions and/or *ad hoc* policies of Defendant Goodwill."). Further, Defendant argues such a claim against her cannot lie because, as a manager, she was a party to any contract between

---

[14] This recommended ruling should not be read to offer any decision regarding whether the policies and procedures to which Plaintiff refers, when considered in the context of the entire Handbook and the Disclaimers, will "give[] rise to a promise, an expectation and a benefit," *Lingard*, 605 S.E.2d at 548, as is required for a contract to be found to exist.

Plaintiff and Goodwill. Defs.' Reply 3. "[A]n action for tortious interference protects the property rights of the parties to a contract against unlawful interference by third parties." *Threlkeld v. Christoph,* 312 S.E.2d 14, 15 (S.C. Ct. App.1984). A tortious interference with contract claim does not "protect a party to a contract from actions of the other party." *Id.*

In her response, Plaintiff focuses again on the issue of whether a contract exists. Pl.'s Mem. 7. She does not specifically address the argument that Hanzel cannot be a proper party to this cause of action based on her status as an agent of Goodwill. In fact, Plaintiff's argument supports dismissal of this tort claim against Hanzel. *Id.* ("Defendant Hanzel, herself, purported to follow Goodwill's policies and procedures in pursuing and accomplishing Plaintiff's termination."). As it is undisputed that Hanzel's actions were undertaken as Goodwill's agent, Plaintiff has not set forth a plausible claim of tortious interference with contract against her. Plaintiff's third cause of action should be dismissed. Because this is the only claim brought against Defendant Hanzel, she should be dismissed from the case.

## IV.    Conclusion and Recommendation

For the reasons set forth herein, it is recommended that Defendants' Motion to Dismiss, ECF No. 6, be denied as to Defendant Goodwill and granted as to Defendant Hanzel.

IT IS SO RECOMMENDED.

*Kaymani D. West*

January 12, 2016                                         Kaymani D. West
Florence, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**